**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **JASON THOMAS and JOSEPH HORNER**, *individually and on behalf of those similarly situated*, | CASE NO. 1:24-cv-422-DRC |
| Plaintiffs, | |
| v. | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| **MITSUBISHI ELECTRIC AUTOMOTIVE AMERICA, INC**., | |
| Defendant. | |

Under Fed. R. Civ. P. 23(e), Plaintiffs Jason Thomas and Joseph Horner ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby move this Court for Preliminary Approval of a proposed class action settlement consisting of a $515,000 non-reversionary common fund.

In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; the Settlement Agreement ("Settlement Agreement") attached as **Exhibit 1**; the Declaration of J. Corey Asay in Support of Preliminary Approval of Class Action Settlement ("Asay Decl.") attached as **Exhibit 2**; the proposed Notice attached as **Exhibit 3**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Preliminary Approval to the Class Action Settlement is attached as **Exhibit 4**.

1

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

The Parties have agreed to settle these claims on a class basis, pursuant to Federal Rule of Civil Procedure 23, and a collective basis, under the Fair Labor Standards Act 29 U.S.C. § 201 *et seq*. (the "FLSA"), § 216(b), for the gross settlement amount of $515,000. This is the maximum total gross settlement inclusive of attorney's fees, litigation costs, claims administration expenses, and a general release payment to Named Plaintiffs Jason Thomas and Joseph Horner. The settlement is the result of extensive arm's length negotiations between the Parties, including mediation before an experienced class/collective action mediator, Michael Russell.

As discussed herein, the settlement meets all the criteria for preliminary approval. To effectuate the settlement and distribute funds to settlement class members, the Parties request that the Court: (1) preliminarily approve the Settlement Agreement; (2) certify the proposed class for settlement purposes only; (3) sign the proposed Preliminary Approval Order; (4) approve and authorize mailing of the proposed Class Notice of Proposed Class Action Settlement (**Exhibit 3**); and (5) set a date for a final approval hearing approximately 160 calendar days after the order granting Preliminary Approval is entered.

### II. BACKGROUND

This action was initially filed on August 9, 2024 by Named Plaintiff Jason Thomas, who worked at Mitsubishi Electric Automotive America, Inc.'s ("MEAA," the "Company," or "Defendant") Mason, Ohio plant. The original Complaint included claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 and the Ohio Prompt Pay Act ("OPPA"), R.C. 4113.15 on behalf of a putative class and collective of hourly workers at the Mason facility. Plaintiffs filed an Amended Complaint on April 25, 2025 with the consent of Defendant in furtherance of this

settlement. The Amended Complaint added claims under the Kentucky Wage and Hour Act ("KWHA"), K.R.S. § 337.010 *et seq.* and the FLSA by a second Named Plaintiff, Joseph Horner, who worked at MEAA's Maysville, Kentucky plant, on behalf of a putative class and collective of hourly workers at the Maysville facility. This lawsuit stems from MEAA's since-ended alleged policy of rounding employee clock-in and clock-out times to the employee's scheduled start and stop times. Plaintiffs allege that MEAA's policy benefited MEAA to the detriment of its hourly employees.

For example, as alleged by Plaintiffs (and without any admission by Defendant): On May 12, 2022, Named Plaintiff Jason Thomas actually clocked in at 15:23, but the system "rounded" his time to 15:30, which Plaintiffs claim deprived him of seven minutes of time worked, and which MEAA disputes. That pattern of clocking in before the scheduled start time and the system rounding the time to the scheduled start time repeated over and over for Mr. Thomas, along with other hourly workers. MEAA asserts that this pattern is not "rounding," but instead that it is an adjustment to the actual time Mr. Thomas started work as there was no work that he could do prior to the time his shift actually started.

Furthermore, if Mr. Thomas or other hourly employees clocked in *after* the start of their scheduled start time, MEAA did not round the worker's clock-in time to his scheduled start time; rather, it used his actual clock-in time. For example, on May 26, 2022, Mr. Thomas clocked in at 15:31; MEAA's system used his actual clock-in time to calculate his hours worked on that day. Again, MEAA asserts that once the shift started, the actual clock-in time reflects the beginning of the time Mr. Thomas started work.

MEAA's policy also affected employees who clocked out after their scheduled stop time. If an employee clocked out past his scheduled stop time, MEAA's system rounded the time back

down, to the benefit of MEAA and detriment of the hourly worker. For example, on May 12, 2022, Mr. Thomas clocked out at 2:04, but the system rounded his time to 2:00, which Plaintiffs claim again deprived him of four minutes worked. MEAA claims that work ends at the time the shift ends. Thus, according to MEAA, the shift end time reflects the latest time that the last work activity of the day could end.

During the relevant period (October 24, 2021, through May 11, 2024),[1] MEAA employed 635 hourly employees at its Mason, OH location, and 417 at its Maysville, KY facility. These hourly employees are generally production workers in MEAA's Mason and Maysville plants, building the products MEAA sells to original equipment manufacturers.

MEAA denies that it has violated any of Named Plaintiffs' or the Class Members' legal rights or that any of them have any entitlement to any recovery from MEAA. The Company asserts among other things that it did not underpay hourly employees because, as explained above, the time rounded was not compensable. The Company also argues that its policy was permissible under the FLSA's regulations, and that it paid employees amounts that were not required by applicable law, including payment of double-time for all hours worked over 48 in a workweek and for hours worked on a paid holiday, as well as treatment of paid vacation and paid holiday time off as "hours worked" in determining weekly hours and any overtime compensation owing, if any. MEAA asserts that it would be entitled to a credit for these excess overtime premiums against any overtime owing (if any), which would defeat liability (if any) as to most rounded time, and any remainder would be non-compensable under the *de minimis* doctrine.

MEAA further asserts that Plaintiffs cannot prove that MEAA knew or should have known

---

[1] This period reflects a start date of three years prior to the date of the execution of the tolling agreement entered into between the parties, and an end of the pay period that included rounded time. MEAA ended its rounding policy at the end of March 2024.

4

of any uncompensated time worked outside employees' scheduled shifts, another requirement to establish liability, including because it has mechanisms by which employees could and did report exceptions where the time paid did not match time actually worked on a given day.

Moreover, MEAA maintains that Plaintiffs could not proceed on a class or collective basis in any event, including because resolving their and other employees' claims would require a multitude of highly individualized fact-specific inquiries, such as determining whether a given employee performed compensable work during the gap time; if so, how much; and why each individual did not report this work to the Company.

Finally, MEAA denies that Plaintiffs will be able to recover liquidated damages even if they prevailed, including because MEAA acted in good faith and made reasonable efforts to comply with the law.

On February 7, 2025, after MEAA produced a significant amount of data and other information related to its time-keeping policies, the Parties participated in a full-day mediation with Michael Russell, a highly regarded mediator with significant experience in class and collective action wage and hour litigation. The Parties reached a settlement at the mediation after a full-day of negotiations. Since that time, after substantial further work and negotiations on the settlement terms, the Parties reached a final Settlement Agreement.

The Parties recognize and acknowledge the benefits of settling this case and the risks of not settling this case. Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports the claims on a class and collective basis. Despite the strength of their case, Plaintiffs are mindful of the arguments that will be raised by MEAA's able counsel. Plaintiffs also recognize and acknowledge the expense and length of time that proceedings necessary to prosecute this matter as a class action against MEAA, post-trial proceedings, and any

appeals would take. Plaintiffs have taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs have thus determined that the Settlement set forth in the Settlement Agreement is fair, reasonable, and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, the Plaintiffs and the Settlement Class and Collective. Plaintiffs' counsel is experienced in wage-and-hour class and collective actions and shares these opinions.

As noted, MEAA maintains that it has a number of meritorious defenses to the claims asserted in this action, including defenses to the merits, defenses to the certification of the case as a class action, defenses to conditional certification, arguments for future decertification, and defenses that would render any theoretical damages, if any, *de minimis* at best. MEAA recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending a potential class action, the costs of any appeals, and the disruption to its business operations arising out of class action litigation. Accordingly, MEAA believes that the Settlement set forth in the Settlement Agreement is likewise in its best interests.

## III.    SUMMARY OF SETTLEMENT TERMS[2]

Under the proposed settlement, MEAA will pay the total gross aggregate amount of $515,000 to establish the Maximum Settlement Fund to be distributed under the Settlement Agreement. The Settlement Agreement defines the Settlement Class as all Mason, Ohio Settlement

---

[2] Unless otherwise indicated herein, capitalized terms used in describing the settlement shall have the meanings set forth in the Settlement Agreement.

Class Employees[3] and Maysville, Kentucky Settlement Class Employees.[4] Ex. 1, ¶ I.LL. The Settlement Class excludes anyone who submits a timely Opt-Out Statement. *Id.*, ¶ III.A.

The Settlement Class includes 635 hourly employees who worked in MEAA's Mason, OH location, and 417 who worked at its Maysville, KY facility (1,052 total). Any Settlement Class Employee who timely submits a valid and complete Claim Form on or before the Participation Deadline in accordance with the Settlement Agreement will become a Participating Class Member in the settlement. Ex. 1, ¶ I.W.

Under the proposed Settlement Agreement, MEAA agrees to pay a total gross aggregate amount of $515,000, which will be used to make payments to Participating Class Members, attorneys' fees and costs (including without limitation costs of settlement administration by the Settlement Administrator), Service Awards to Named Plaintiffs, and the Reserve Fund. *Id.*, ¶ I.R. MEAA will also pay the Employer Payroll Taxes, which it will pay independent of and in addition to the Maximum Settlement Fund. *Id.*, ¶ I.R.

The Parties agree in relevant part that the Settlement Agreement is not an admission that class or collective action certification is or would be proper in this Action absent settlement, and is not an admission or proof of any wrongdoing or legal violation of any kind by MEAA or any of the other Released Parties, which MEAA and the other Released Parties expressly deny.

### A.  Settlement Benefits

The Maximum Settlement Fund will provide monetary relief to Participating Class Members. The Settlement Administrator will determine an initial estimated share of the Net

---

[3] "Mason, Ohio Settlement Class Employees" means all non-exempt employees of MEAA who worked at its facility in Mason, Ohio at any point from October 24, 2021 to May 11, 2024.

[4] "Maysville, Kentucky Settlement Class Employees" means all non-exempt employees of MEAA who worked at its facility in Maysville, Kentucky at any point from October 24, 2021 to May 11, 2024.

Settlement Amount for each Settlement Class Employee. Each Settlement Class Employee's estimated share of the Net Settlement Amount will be calculated *pro rata* by dividing the Settlement Class Employee's Eligible Workweeks by the total combined Eligible Workweeks for all Settlement Class Employees ("Preliminary Allocation"). Settlement Class Employees who do not timely submit a valid Claim Form or who timely submit a valid opt-out will have their Preliminary Allocation added back to the Net Settlement Amount to be allocated because Participating Class Members. After the expiration of the Participation Deadline and the entry of Final Approval, each Participating Class Member's estimated final share of the Net Settlement Amount will be calculated *pro rata* by dividing the Participating Class Member's Eligible Workweeks by the total combined Eligible Workweeks of all Participating Class Members.

Any portion of the Net Settlement Amount that is not claimed by Participating Class Members will be remitted to the unclaimed funds program in the state where the Participating Class Member worked. The Settlement Administrator will also establish a Reserve Fund ($5,000.00) to make payments to Participating Class Members who dispute their allocation amounts, to individuals who were not identified as Settlement Class Employees but have a good faith claim for participation in the settlement, or for any other reasonable purpose necessary to effectuate the settlement. Ex. 1, IV.B.2.c. Any funds remaining from the Reserve Fund will be redistributed to Participating Class Members on a *pro rata* basis, if economically feasible. If not economically feasible, then, subject to Court approval, the Unused Reserve Funds will be provided to the Legal Aid Society of Greater Cincinnati and Legal Aid of the Bluegrass. Each organization would receive 50% of the Unused Reserve Funds.

### B. Scope of Release

Class Members who do not timely opt out of the settlement will release state and local claims alleged in the Amended Complaint, and those that are based on such the pleadings in this matter or that are reasonably related thereto, including claims arising under the Ohio Prompt Pay Act, R.C. § 4113.15, and the Kentucky Wage and Hour Act, K.R.S. § 337.020–337.385. Likewise, Participating Class Members will also release claims arising under Federal Law that are alleged in the Amended Complaint, and those that are based on such the pleadings in this matter or that are reasonably related thereto, including claims under the Fair Labor Standards Act, and overtime claims arising under Ohio R.C. § 4111.03 *et seq.* Named Plaintiffs, in addition to the payments and releases provided as Participating Class Members, will provide a general release of claims in exchange for their Court-approved Service Awards. Ex. 1, ¶ III.E.1–2.

### C. The Notice and Administration Plans

If the Court grants Preliminary Approval of the Settlement Agreement, the Parties will use a mutually agreed upon settlement administrator to administer the settlement. Within thirty days of the Preliminary Approval, MEAA will provide the Settlement Administrator with payroll and other data to effectuate notice and the settlement. The Settlement Administrator will also establish a qualified settlement fund ("QSF") for purposes of administering the settlement, which MEAA will fund with the Maximum Settlement Fund.

The Settlement Administrator will send a notice of preliminary approval and settlement to each Settlement Class Member. Settlement Class Members will each be afforded 60 days after mailing of the notice to submit their Claim Forms, Opt-Out Statements, or Objections, if any. Ex. 1, IV.B.3. As noted above, the Settlement Administrator will make a Preliminary Allocation of the Net Settlement Amount for each Class Member. After the Participation Deadline, the entire Net

Settlement Amount shall be allocated among the Participating Class Members, and the Settlement Administrator will calculate final amounts due to each Participating Class Member as Settlement Checks. No funds will revert to MEAA.

The Final Settlement Approval Hearing is to be held at least one hundred and sixty (160) calendar days after entry of the Preliminary Approval Order. At least fourteen (14) calendar days before the Final Settlement Approval Hearing, Named Plaintiffs will move the Court for entry of the Final Approval Order and the associated Judgment (which MEAA will not oppose).

### D. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees not to exceed one-third of the Maximum Settlement Fund ($171,666.67), and for reimbursement of Class Counsel's reasonable costs and litigation expenses not to exceed $15,000, which shall be paid from the Maximum Settlement Fund. Ex. 1, ¶ III.D. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. The Settlement Agreement further provides for a payment of up to $10,000 for Named Plaintiff Jason Thomas, and $2,500 for Named Plaintiff Joseph Horner, subject to Court approval, as Service Awards for their services in representing the Class and as consideration for their general releases of claims. *Id.*, ¶ III.C.

### IV. LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Fed. R. Civ. P. 23(e) provides three steps for approving a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369,

372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015). Plaintiffs request that the Court preliminarily approve the proposed Settlement.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).[5] The Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[6]

---

[5] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 1:04-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[6] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable.").

## V.    ARGUMENT

### A.  The proposed settlement satisfies the standard for preliminary approval.

#### 1.  The proposed settlement is the product of arm's-length negotiations between experienced professionals.

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g.*, *Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Asay Decl. ¶ 19, 22. Settlement negotiations in this case involved a full-day mediation session with an experienced class action mediator. *Id*. Following mediation, the Parties' counsel continued to negotiate the full settlement terms at arm's length, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Temp. Servs., Inc.*, 2012 WL 13008138, at *10 (D.S.C. July 31, 2012) (citing *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001)) ("The fact that negotiations were 'adversarial' and were conducted at 'arm's length' helps dispel any concern that counsel colluded in reaching agreement.").

No collusion or illegality existed during the settlement process. Asay Decl. ¶ 25. Class Counsel, without any opposition from MEAA, support the settlement as fair and reasonable, and all certify that it was reached at arms' length. *Id.* at ¶ 24.

**2. The proposed settlement falls within the range of reasonableness and warrants issuance of notice and a final approval hearing.**

Although Plaintiffs believe that the claims asserted in the Action are meritorious and the Class Members would ultimately prevail at trial, continued litigation against MEAA poses significant risks that make any recovery for Settlement Class Employees uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted).

In this case, Plaintiffs calculated that the total lost overtime wages, after appropriate offset, for the Mason Class Members, is $312,196.59, and for the Maysville Class Members it is $293,177.12. Thus, Plaintiffs assert that the total overtime damages for all Class Members is $605,373.71. The Maximum Settlement Fund therefore represents 85% of Plaintiffs' calculation of the Class Members' total lost backpay. Asay Decl. ¶ 23. While Plaintiffs contend that the Class Members could also recover liquidated damages in an amount equal to their backpay, that would require them to meet their burden of certifying classes and collectives and prevail at trial on liability, and only if MEAA failed to demonstrate a good faith defense. *Id.* at ¶ 24. Neither of those outcomes is guaranteed (or even probable). The Maximum Settlement Fund thus represents a resolution in the range of reasonableness.

**3. The proposed settlement has no obvious deficiencies.**

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009).

13

Plaintiffs, like all other Participating Class Members, will receive their settlement benefit in accordance with a claims process to be presented to the Court for approval.

The matter of attorneys' fees and payment of expenses, as well as any Service Awards for Plaintiffs, will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee request to one-third of the Common Fund ($171,666.67), which is well within the range of fees awarded within the Sixth Circuit. *See In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% – 50%"); *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit"); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio June 27, 2022) (awarding attorneys' fees of 1/3 of the $4.25 million common fund); *Bechtel v. Fitness Equip. Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio Sept. 30, 2022) (Doc. No. 73, Page ID 1579) (awarding attorneys' fees of 1/3 of the $3.65 million common fund).

Plaintiffs also seek Service Awards of up to $10,000 for Mr. Thomas and up to $2,500 for Mr. Horner, each for their active involvement in this litigation and as consideration for their general releases being provided. Ex. 1, ¶ III.C. Mr. Thomas's participation in this litigation was substantial, including traveling to Nashville, Tennessee to attend the all-day mediation. Moreover, Mr. Thomas spent a significant amount of his own money to attend the mediation. Plaintiffs submit that his Service Award should reflect both the time and out-of-pocket expenses he contributed to achieving this settlement.

Mr. Horner's contributions to this litigation were critical to the Maysville Class Members' participation in this settlement at all. The amount requested for Mr. Horner is appropriate given

his involvement in this matter. Furthermore, because Plaintiffs and Class Counsel will move for an award of costs, fees, expenses, and the Plaintiffs' Service Awards at least fourteen (14) days before the objection and opt out deadlines, the Court will be able to consider these requests and the Class's response to them, if any, when evaluating whether to grant final approval of class action settlement.

For these reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### 4. The settlement agreement treats class members equitably relative to each other.

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. In this case, Counsel have applied a standard formula used in wage and hour litigation to determine the amount of each Participating Class Member's share of the settlement. By using each Participating Class Member's weeks worked as a percentage of all weeks worked by all Participating Class Members, the Settlement Agreement ensures that those individuals who would have had the highest damages at trial will receive the highest settlement allocation. This factor is likely to be satisfied in favor of settlement approval.

### B. Certification of the settlement class is appropriate.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate where "the questions of law

or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

### 1.    Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement"); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying a 23-person class).

Here, the Settlement Class consists of 635 hourly employees who worked in MEAA's Mason, OH location, and 417 who worked at its Maysville, KY facility (1,052 total). The total number of Class Members here is 1,052. This case satisfies the numerosity element.

### 2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting

opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id*. (Internal quotation marks and citation omitted). A common nucleus of operative fact usually is enough to satisfy the commonality requirement of Rule 23(a)(2). *See In re FedEx Ground Package Sys., Inc*., 273 F.R.D. 424, 435 (N.D. Ind. 2008).

Plaintiffs' claims turn on whether MEAA's alleged timekeeping and pay policies, applicable to both the Mason, Ohio and Maysville, Kentucky plants, deprived Class Members of compensable time. Other common questions include whether MEAA underpaid Named Plaintiffs and the Class Members, and in turn whether MEAA failed to pay the Ohio Class Members in accordance with the OPPA, whether MEAA acted in good faith, and whether MEAA knew or should have known its timekeeping policy and procedures violated the FLSA, OPPA, and the KWHA. Plaintiffs submit that resolution of these inquires revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *Am. Med. Sys.*, 75 F.3d at 1082. Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the Class Members represented.

In this case, the claims all involve MEAA's alleged time-rounding policies, as well as its conduct toward the Class Members. Named Plaintiffs' and the Class Members' claims are based on the same legal theories. Moreover, Mr. Thomas worked at the Mason, Ohio plant, and Mr. Horner worked at the Maysville, Kentucky plant. They each seek to represent those Class Members who worked at their respective work sites. Thus, each Named Plaintiffs' claims are typical of those of the claims of the Classes they seek to represent, and they are appropriate Class Representatives.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: (1) the "representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594.

Named Plaintiffs have no conflicts with the Class and have participated actively in the case. Asay Decl. ¶ 34. Named Plaintiffs are arguing the same violation of law, based on a common course of conduct, and are seeking the same remedies, as the putative class. Moreover, Class Counsel have experience in class and collective wage and hour litigation, including wage and hour class and collective actions in courts throughout the country. Asay Decl. ¶ 7.

### 5. Certification under Rule 23(b)(3) Is Appropriate

Class certification under Rule 23(b)(3) has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2)

commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084). When assessing these components, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 (on a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial").

The Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). Like commonality, individualized measures of damages will not defeat the predominance requirement. *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 380 (D.S.C. 2015).

The court also considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017)

(citing Fed. R. Civ. P. 23(b)(3)).

### a. Common Questions of Law and Fact Predominate over the Settlement Class

As explained above, Named Plaintiffs assert that the common nucleus of facts in the present case derives from MEAA's alleged time rounding and pay policies, common to all Class Members, in violation of the FLSA, OPPA, and KWHA. Based on these alleged violations of law, Named Plaintiffs contend that the Settlement Class Members are entitled to the same legal remedies. Indeed, Named Plaintiffs contend that the Amended Complaint does not raise any issues that are specific to the Named Plaintiffs or the individual members of the class. For purposes of settlement only, MEAA does not contest Named Plaintiffs' motion to certify the proposed settlement class. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper.

### b. A Settlement Class Is the Superior Method of Adjudicating this Case

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. See Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. Moreover, the cost of litigating each Class Member's case on an individual basis would be substantial for each Class Member; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. See Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any

effective redress unless they may employ the class-action device." (internal quotations omitted).

Settlement context aside, a class action is superior here in that requiring class members to bring individual suits would be inefficient, costly and time consuming. Named Plaintiffs assert that the alternative method of resolution could be over 1,000 individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery. And for MEAA and the Court, it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. So a class action may be the only feasible way for some plaintiffs to pursue their claims. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 426 (4th Cir. 2003) ("In the absence of class certification, very few claims would be brought against [the defendant], making the adjudication of [the] matter through a class action superior to no adjudication of the matter at all. Thus, class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action"); *Burnett v. Conseco Life Insurance Company*, 2020 WL 4207787, at *7 (S.D. Ind. 2020) (finding that class treatment was superior to individual claims because "[i]t will be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs would have a difficult and costly task in seeking relatively small damages solely on an individual basis."). Additionally, here, this action is the only litigation pending concerning this controversy and no other class member has indicated they wish to control this action or their claim individually. Moreover, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

For these reasons, Named Plaintiffs submit that the requirements of Rule 23 have been

satisfied for purposes of this Settlement, and that the proposed Class should be preliminarily certified, that Jason Thomas and Joseph Horner should be appointed as class representatives, and that J. Corey Asay of HKM Employment Attorneys LLP should be appointed as Class Counsel.

### C. The Proposed Form and Manner of Notice Is Reasonable and Should Be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Settlement Process outlined in the Settlement Agreement provides the best notice practicable under the circumstances. The Notice will be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from MEAA's records, and through databases tracking nationwide addresses and address changes. Furthermore, notice will be emailed to all individuals for whom MEAA has an email address. The Settlement Administrator will also establish a case website, where Settlement Class Employees can view the notice and electronically submit their Claim Forms, if they so choose.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Employees that Class Counsel will apply to the Court for attorneys' fees of no

more than one-third of the common fund, plus reimbursement of litigation costs and expenses up to $15,000. The proposed Notice complies with Rule 23 and due process because it informs Settlement Class Employees of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if a Settlement Class Employee does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries about the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Thus, the Notice Plan and Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), *superseded on other grounds*. The manner of notice, which includes individual notice by mail and email to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the notice plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### D. The Court should also authorize notice under the FLSA.

The Amended Complaint also raises claims arising under the FLSA. The FLSA's "collective action" provision allows one or more employees to sue for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). But "unlike a Rule 23 class action, an FLSA collective action is not representative – meaning that 'all

plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark v A&L Homecare and Training Center, LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) (quoting *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021)).

District Courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify putative class members that they may choose to "opt-in" to the suit. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). In determining whether to approve the dissemination of notice, the court makes a provisional determination as to whether there are potential plaintiffs that are "similarly situated" to the named plaintiff(s). *Clark*, 68 F.4th at 1010. While the FLSA does not define "similarly situated," [p]otential plaintiffs can be similarly situated where their claims are "unified by common theories of defendants' statutory violations," such as "a single, FLSA-violating policy[.]" *Albert v. Honda Dev. & Mfg. of Am., LLC*, 752 F. Supp. 3d 869, 877 (S.D. Ohio 2024) (quoting *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

Here, Named Plaintiffs are similarly situated to the Settlement Class Employees because they allege the same claim and the same injury against MEAA – the alleged failure to pay overtime because of MEAA's rounding policy. Accordingly, Named Plaintiffs seek permission to send the Notice to all Settlement Class Employees allowing them to opt-into this case for purposes of settling their FLSA claims.

## IV.   CONCLUSION

The proposed Settlement Agreement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class Employees; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation. For all these reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed

Settlement Agreement, sign the proposed Order, approve and authorize mailing/emailing of the proposed Notice, and, to accommodate the Notice period, set a date for a final approval hearing approximately 160 days after the date of preliminary approval.

Respectfully submitted,

*s/J. Corey Asay*
J. Corey Asay
HKM EMPLOYMENT ATTORNEYS LLP
312 Walnut Street, Suite 1600
Cincinnati, Ohio 45202
T: (513) 318-4496
F: (513) 318-4496
E: casay@hkm.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2025, I filed the foregoing using the Court's CM/ECF system, which I understand will transmit notice to all counsel of record.

*s/J. Corey Asay*
*Counsel for Plaintiff*